IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| SUN-TIMES MEDIA GROUP, INC., *et al.*,[1] | ) Case No. 09-11092 (CSS) |
| Debtors. | ) Jointly Administered |
| | ) Hearing Date: June 10, 2009 at 10:00 a.m. ET |
| | ) Objection Deadline: June 3, 2009 at 4:00 p.m. ET |

## DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING THE SALE INCENTIVE PLAN AND AUTHORIZING PAYMENTS RELATED THERETO

The above-captioned debtors-in-possession (collectively, the "Debtors"), file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, approving the Debtors' Sale Incentive Plan (a copy of which is attached hereto as Exhibit B, the "SIP") which provides for potential incentive payments to certain of the Debtors' employees in connection with a sale of the Debtors' assets. In support of this Motion, the Debtors submit the Declaration of James D. McDonough, Senior Vice President, Chief Administrative Officer, General Counsel and Secretary of Sun-Times Media Group, Inc. in Support of the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Sun-Times Media Group, Inc. (8892); American Publishing (1991) LLC (9303); American Publishing Company LLC (5797); American Publishing Management Services, Inc. (7433); APAC-95 Oklahoma Holdings, Inc. (1123); Centerstage Media, LLC (1160); Chicago Group Acquisition LLC (4250); Chicago Sun-Times Features, Inc. (9928); Chicago Sun-Times LLC (7749); Digital Chicago Inc. (0626); Fox Valley Publications LLC (2434); HGP, Partnership (4292); HIPI (2002) Inc. (3946); Hollinger Australian Holdings Limited (3321); Hollinger International Publishing Inc. (0603); HTH Benholdco LLC (8274); HTH Holdings Inc. (8275); HTNM LLC (0714); HTPC Corporation (9332); LHAT Corporation (8117); Meridian Star, Inc. (3390); Midwest Suburban Publishing, Inc. (1455); Northern Miner U.S.A., Inc. (5174); Oklahoma Airplane LLC (1123); Pioneer Newspapers Inc. (0502); Reach Chicago LLC (4252); Sun Telemarketing LLC (8780); Sun-Times Distribution Systems, Inc. (9838); Sun-Times PRD Inc. (8118); TAHL (2002) Inc. (3945); The Johnstown Tribune Publishing Company (7927); The Post-Tribune Company LLC (7370); The Red Streak Holdings Company (9358); The Sun-Times Company (7751); XSTMHoldings LLC (9284). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 350 N. Orleans St., Floor 10-S, Chicago, IL 60654.

Motion for Entry of Order Approving the Sale Incentive Plan and Authorizing Payments Related Thereto (attached hereto as <u>Exhibit C</u>, the "McDonough SIP Declaration"), and respectfully state as follows:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 363(b) and 503(c) of title 11 of the United States Code (the "Bankruptcy Code").

### Background

4. On March 31, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On April 1, 2009, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 26]. On April 15, 2009, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Bankruptcy Code § 1102 (the "Committee").

5. A description of the Debtors' business and the reasons for filing these chapter 11 cases are set forth in the Declaration of James D. McDonough, Senior Vice President, Chief Administrative Officer, General Counsel and Secretary of Sun-Times Media Group, Inc. in Support of First Day Pleadings [Docket No. 4], which was filed on the Petition Date and is incorporated herein by reference.

## The Sale Incentive Plan

6. The purpose of the SIP is two-fold: (a) to maximize value for all parties in interest in the Debtors' chapter 11 cases and (b) to motivate essential personnel to achieve a successful sale of the assets. The SIP accomplishes these goals because the Debtors will make no payments under the SIP unless they achieve certain price targets for the sale of the assets. Therefore, the SIP will truly incentivize the personnel who will have critical responsibility, substantial oversight and control during the sale process (the "Eligible Employees"). In addition, the structure of the SIP is reasonable and in line with competitive practice for incentives associated with asset sales in chapter 11 cases.

7. The Debtors' ability to maximize the value of their estates for the benefit of their stakeholders through a sale of the assets is dependent on the ability of the Eligible Employees to adeptly navigate significant challenges and shoulder increased burdens. The Eligible Employees will need to work with the Debtors' employees, customers and suppliers to keep the Debtors' businesses operating in an extremely difficult industry and economic climate, while, in most cases, simultaneously devoting significant amounts of time and attention toward efforts related to the sale of the assets. As primary points of contact for potential purchasers, Eligible Employees will play indispensable roles in the process of obtaining the best price for the assets. For instance, in addition to their normal duties, certain Eligible Employees will continue to: (a) comply with due diligence requests from potential purchasers; (b) respond to purchaser inquiries in a timely and thorough manner; (c) conduct presentations, as necessary, to potential purchasers and the Debtors' board of directors on the sale process; and (d) review, analyze and negotiate the terms of potential offers. Eligible Employees also are charged with the task of keeping the Debtors' workforce motivated and producing the top-notch product the Debtors' customers expect, all while the Debtors' future remains uncertain. Accordingly, these Eligible

Employees must perform at a high level throughout the sale process for the Debtors to obtain the highest and best value for the assets, thus obtaining the best result for the Debtors' stakeholders. A successful sale process will demand the laser focus, leadership and complete dedication of the Eligible Employees.

A. **Design Of The Proposed SIP**

8. In concert with their advisors, the Debtors have developed a plan that properly incentivizes the Eligible Employees to perform at peak levels throughout the sale process. The relevant terms of the SIP are as follows:

(a) **Eligible Employees**. The Debtors' selected 20 employees and members of management to be eligible for incentive compensation in the form of cash awards (the "Incentive Compensation") under the SIP.

(b) **Participation Requirements**. The Debtors selected the Eligible Employees based on:

(i) each Eligible Employee's unique ability to contribute to the successful execution of the sale process; and

(ii) the Debtors' need to incentivize such Eligible Employee in order to maximize opportunities for value creation through the sale process.

(c) **Incentive Compensation Amounts**. Upon a closing of a sale transaction of the assets resulting in net proceeds to the Debtors, net of Incentive Compensation payable (the "Sale Proceeds"), of at least a minimum amount (the "Minimum Threshold"), each Eligible Employee will receive a specified percentage of his or her annual base salary ("Base Salary") as Incentive Compensation. If the Debtors receive Sale Proceeds of certain amounts above the Minimum Threshold (the "Additional Thresholds," and together with the Minimum Threshold, the "SIP Thresholds"), the Eligible Employees become eligible to receive additional percentages of their Base Salary as Incentive Compensation. There is no guaranteed minimum bonus pool; Eligible Employees will receive no compensation under the SIP in the event that a sale transaction is not completed or the Sale Proceeds do not exceed the Minimum Threshold. In no event will any Eligible Employee's Incentive Compensation exceed 40% of the Eligible

Employee's Base Salary; nor will the total of all Incentive Compensation paid under the SIP exceed $1.8 million.[2]

(d) **Payment of Incentive Compensation**. The Debtors will pay any Incentive Compensation in a lump-sum cash payment as soon as practicable following the closing of a sale transaction, but in no event later than 30 days thereafter.

(e) **Termination of Employment**. If, following the closing date of a sale transaction, but prior to the Incentive Compensation being paid, an Eligible Employee's employment with the Debtors is terminated (i) for Good Reason (as defined in the SIP) or (ii) without Cause (as defined in the SIP), the Eligible Employee will remain entitled to his or her Incentive Compensation, which will be paid on its regularly scheduled payment date. If the Eligible Employee's employment is terminated for any other reason, the Eligible Employee will forfeit his or her right to any Incentive Compensation.

**B. Benefits Of The Proposed SIP**

9. The SIP is an incentive-based bonus plan that properly incentivizes the Eligible Employees to maximize the potential purchase price of the assets. Payments to the Eligible Employees under the SIP are keyed to the Sale Proceeds received in the sale of the assets. As (a) the Eligible Employees do not receive any payments if the sale is not consummated and (b) each Eligible Employee's Incentive Compensation increases only upon the achievement of the SIP Thresholds, the interests of the Eligible Employees and the Debtors' stakeholders are aligned. Therefore, the SIP will incentivize the Eligible Employees to achieve the highest and best value for the assets.

---

[2] The Debtors' senior management, in consultation with its advisors, and with the Board of Directors' oversight and approval, determined the SIP Thresholds. The SIP Thresholds are explained in further detail in the McDonough SIP Declaration. This information, although relevant to the relief requested herein, is highly sensitive. Indeed, if such information became public, it would unfairly prejudice the Debtors' ability to negotiate improved pricing and other sale terms with potential purchasers. For such reasons, the Debtors are seeking to file select portions of the McDonough SIP Declaration under seal.

## Relief Requested

10. By this Motion, the Debtors seek an order, pursuant to Bankruptcy Code § § 363(b) and 503(c)(3), approving the SIP and authorizing them to make all payments related thereto.

## Basis for Relief

### A. The SIP Should Be Evaluated Under Bankruptcy Code § § 503(c)(3) and 363(b).

11. The SIP may be approved under either Bankruptcy Code § 503(c)(3), as to insiders, or § 363(b), as to non-insiders.[3] *See In re Dana Corporation*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006); *see also Plusfunds Group*, Case No. 06-10402 (JMP) (Bankr. S.D.N.Y. April 19, 2006) [Docket No. 149] (approving payments to key management under incentive plan upon sale); *In re Musicland Holding Corp.*, Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006) [Docket No. 342]

#### 1. The SIP, As It Applies To Insiders, May Be Evaluated Under The Facts and Circumstances Standard Of § 503(c)(3).

12. Under the SIP, certain of the potential award recipients are "insiders" and therefore the SIP arguably implicates Bankruptcy Code § 503(c), which comprises three sections: § 503(c)(1) contains a general prohibition of retention plans; § 503(c)(2) places limitations on severance payments; and § 503(c)(3) sets forth standards governing other transfers to insiders. For the reasons set forth herein, Bankruptcy Code § § 503(c)(1) and 503(c)(2) are not applicable to evaluating the SIP. To the extent any awards constitute payments outside the ordinary course of business, they may be evaluated under § 503(c)(3).

---

[3] Bankruptcy Code § 101(31)(B) defines an "insider" of a corporation as (a) director, (b) officer, (c) "person in control" of the debtor, (d) partnership in which the debtor is a partner, (e) general partner of the debtors, and (f) a relative of a general partner, director, officer, or person in control of the debtor. 11 U.S.C. § 101(31).

13. By the statute's plain language, Bankruptcy Code § 503(c)(1) pertains solely to retention plans and § 503(c)(2) addresses only the requirements for severance plans, and neither provision applies to performance-based incentive plans. *See, e.g., In re Nobex Corp.*, Case No. 05-20050 (CSS) (Bankr. D. Del. January 12, 2006), Hr'g Tr. at 67 [Docket No. 194]; *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (KJC) (Bankr. D. Del. August 22, 2006 and December 20, 2006) [Docket Nos. 357, 847] (ordering various relief requested in connection with debtors' incentive bonus plans pursuant to § 363(b) and 503(c)); *In re Musicland Holding Corp.*, Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006) [Docket No. 342] (debtor continuing to provide incentive bonuses under management incentive plan did not violate § 503(c)); *In re Dana Corporation*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) (applying § 503(c)(3) in absence of applicability of §§ 503(c)(1) or (2)); *In re Calpine Corp.*, Case No. 05-60200 (BRL), (Bankr. S.D.N.Y. 2006 April 26, 2006) Hr'g Tr. at 87 [Docket No. 1900].

14. The SIP contains neither retention nor severance components. In particular, as further set forth in the McDonough SIP Declaration, the SIP comprises only targeted incentive payments to approximately 20 Eligible Employees. These incentive payments are based upon achievement of certain sale-related criteria, namely, receiving Sale Proceeds that exceed the SIP Thresholds. Therefore, the Debtors' respectfully submit that neither § 503(c)(1) nor § 503(c)(2) apply to this Motion. There is no guarantee that the Eligible Employees will receive any payment pursuant to the SIP. If the sale of the assets is not completed or if the Sale Proceeds do not exceed the Minimum Threshold, there are no payments under the SIP. The increases in payments are keyed to obtaining the best result from the sale of the assets and are not tied to retention of the Eligible Employees. Further, the SIP is consistent with the structure of the sale

bonus programs discussed below that have been recognized as outside the scope of §§ 503(c)(1) and (c)(2).

15.     The proposed SIP also is permissible under Bankruptcy Code § 503(c)(3). The relevant part of § 503(c)(3) prohibits "other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case," and courts have generally used a form of the "business judgment" standard to determine whether incentive programs and the payments thereunder meet the § 503(c)(3) "facts and circumstances" standard. *See, e.g., In re Dura Automotive Systems, Inc.*, Case No. 06-11202 (KJC), (Bankr. D. Del. April 25, 2007) Hr'g Tr. at 40 [Docket No. 1170]; (Section 503(c)(3) "mean[s] something above the business judgment standard but maybe not much farther above it"); *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (KJC) (Bankr. D. Del. August 22, 2006 and December 20, 2006) [Docket Nos. 357, 847] (ordering various relief requested in connection with debtors' incentive bonus plans pursuant to §§ 363(b) and 503(c)); *In re Nobex Corporation*, Case No. 05-20050 (CSS) (Bankr. D. Del. Jan. 20, 2006) [Docket No. 194] (ruling that "[§ 503(c)(3)] is the catch-all and the standard . . . for any transfers or obligations made outside the ordinary course of business . . . that are justified by the facts and circumstances of the case … I find it quite frankly nothing more than a reiteration of the standard under 363 … the business judgment of the debtor…"); *In re Riverstone Networks, Inc.*, Case No. 06-10110 (CSS) (Bankr. D. Del. March 28, 2006) [Docket No. 224] (same); *In re Pliant Corporation*, Case No. 06-10001 (MFW) (Bankr. D. Del. March 14, 2006) [Docket No. 355] (same).

### 2.     The SIP, As It Applies To Other Participants, Should Be Evaluated Under The Business Judgment Standard Of § 363(b).

16.     Certain participants in the SIP are not "insiders." Payments to these individuals should therefore be evaluated under Bankruptcy Code § 363(b), which provides that a debtor in

possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

17.     Courts long have held that the use, sale or lease of property of the estate outside the ordinary course of business should be authorized when there is a "sound business purpose" that justifies such use of estate property. *See In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986) (adopting the "sound business purpose" test to evaluate motions brought pursuant to Bankruptcy Code § 363(b)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (same); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983). Consistent therewith, courts have evaluated, and approved, employee compensation programs under that standard. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. at 154 (upholding the bankruptcy court's approval of a key employee incentive plan); *In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) ("[i]t is a proper use of a debtor's business judgment to propose bonuses for employees who helped propel the debtor successfully through the confirmation process"); *see also In re Nobex Corporation*, Case No. 05-20050 (CSS) (Bankr. D. Del. May 15, 2006) [Docket No. 373]; *In re Riverstone Networks, Inc.*, Case No. 06-10110 (CSS) (Bankr. D. Del. March 28, 2006) [Docket No. 224]; *In re Pliant Corporation*, Case No. 06-10001 (MFW) (Bankr. D. Del. March 14, 2006) [Docket No. 355].

    **B.**    **The SIP Has A Sound Business Purpose, Is Justified By The Facts And Circumstances Of These Chapter 11 Cases And Should Be Authorized By This Court Pursuant to § § 363(b) and 503(c)(3).**

18.     The Debtors respectfully submit that the SIP is a proper exercise of their business judgment and is warranted by the facts and circumstances of these chapter 11 cases. The SIP is calibrated to "achieve the desired performance" because its payments are based solely on the

achievement of certain sale price targets. *See In re Dana Corp.*, 358 B.R. at 576. The potential payments contemplated by the SIP are reasonable, and indeed modest, because the SIP properly incentivizes the Eligible Employees to obtain the highest value possible for the sale of the assets and are in line with incentives associated with asset sales in other chapter 11 cases. *Id.* Any increase in the cost of the SIP reflects a substantial increase in the Sale Proceeds received in a sale of the assets.

        **1.    The SIP Is Calculated To Achieve The Desired Performance And Is Vital To Maximizing Value For The Estates.**

19.    The Eligible Employees and their skills, knowledge and motivation are essential to achieving the highest and best possible value for the estate. In the upcoming days and weeks, the Eligible Employees will be asked to assume significantly increased responsibilities. The Debtors must maintain key relationships with their long-standing customers and vendors and the Eligible Employees will play a critical role in maintaining those relationships. Further, the Eligible Employees will be required to quickly respond to diligence inquiries, guide potential purchasers through all aspects of the Debtors' businesses and ensure that the sale process does not disrupt ongoing operations. In short, the Debtors ability to obtain value for the benefit of all stakeholders in these chapter 11 cases will depend on the Eligible Employees.

20.    Consequently, the Debtors have determined to implement the SIP in order to properly incentivize the Eligible Employees since their performance is essential to maximizing value for the estates. Such a decision falls squarely within the Debtors' sound business judgment. *See Montgomery Ward Holding Corp.*, 242 B.R. at 155; *In re Global Home Prods.*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."). Moreover, the

total amounts of potential Incentive Compensation are relatively modest compared with either the value that may be realized upon a successful sale or the potential consequences of failure.

### 2. The Potential Incentive Compensation Under The SIP Is Reasonable And Was Developed Upon The Advice Of The Debtors' Advisors.

21. The proposed SIP also is generally consistent with incentive plans regularly approved by courts in this district to enhance the likelihood of success for a sale process such as the one proposed by the Debtors. *See, e.g., In re Flying J Inc.*, Case No. 08-13384 (MFW) (Bankr. D. Del. May 7, 2009) [Docket No. 1157]; *In re Leiner Health Prods. Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 14, 2008) [Docket No. 227]; *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. June 28, 2007) [Docket No.1369]. Similarly, courts in this district and others have regularly approved management bonus plans under § 503(c)(3) in order to provide incentives for increased performance from key personnel. *See, e.g., In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. June 25, 2008) [Docket No. 939].

22. The Debtors have provided the Committee with the SIP prior to the filing of this Motion and have discussed, and will continue to discuss, the terms of the SIP with the Committee.

### Notice

23. The Debtors have provided notice of this Motion by regular mail to: (a) the U.S. Trustee; (b) counsel to the Committee; and (c) any persons who have filed a request for notice in the above-captioned cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

24. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein and in the McDonough SIP Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, approving the SIP and granting such other and further relief as the Court deems appropriate.

Dated: May 21, 2009
       Wilmington, Delaware

                                          /s/ Pauline K. Morgan
Pauline K. Morgan (Bar No. 3650)
Sean M. Beach (Bar No. 4070)
Sean T. Greecher (Bar No. 4484)
Jaime N. Luton (Bar No. 4936)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
- and -
James H.M. Sprayregen, P.C.
James A. Stempel
David A. Agay
Sarah H. Seewer
**KIRKLAND & ELLIS LLP**
Aon Center
200 East Randolph Drive
Chicago, Illinois 60601-6636
Telephone: (312) 861–2000
Facsimile: (312) 861–2200

Attorneys for the Debtors and Debtors in Possession